■ NEW YORK ANNUAL CONFERENCE OF THE METHODIST CHURCH et al., Appellants-Respondents, v NAM UN CHO, Respondent-Appellant. (Matter No. 1.) KOREAN CHURCH OF THE WORLD CRUSADE, Respondent-Appellant, v NEW YORK ANNUAL CONFERENCE OF THE METHODIST CHURCH et al., Appellants-Respondents. (Matter No. 2.) In the Matter of KOREAN CHURCH OF THE WORLD CRUSADE, Respondent-Appellant, v NEW YORK ANNUAL CONFERENCE OF THE METHODIST CHURCH et al., Appellants-Respondents. (Matter No. 3.)—In consolidated matters (1) by the New York Annual Conference of the Methodist Church and the New York Korean Methodist Church, *inter alia,* to remove the Reverend Nam Un Cho from the parsonage of the New York Korean Methodist Church at 199 St. Paul's Road in Hempstead (matter No. 1), (2) by the Korean Church of the World Crusade for a judgment declaring, *inter alia,* that the United Methodist Church has no authority over them (matter No. 2) and (3) by the Korean Church of the World Crusade to establish its right, title and interest to the real property upon which its church and parsonage are located (matter No. 3), the New York Annual Conference of the Methodist Church and the New York Korean Methodist Church appeal from stated portions of a judgment of the Supreme Court, Nassau County (Morrison, J.), dated October 16, 1987, which, *inter alia,* determined that the Korean Church of the World Crusade, the congregation headed by Reverend Nam Un Cho, had the right to withdraw

from the parent church, taking its property with it; and the Reverend Nam Un Cho cross-appeals, as limited by his brief, from stated portions of the judgment, which, *inter alia,* declared that a meeting held by the Korean Church of the World Crusade on December 28, 1986, was illegal, and the Korean Church of the World Crusade cross-appeals, as limited by its brief, from stated portions of the same judgment which, *inter alia,* declared that a meeting it held on December 28, 1986, was illegal and "the discharge of the nine trustees, the election of six new trustees and all acts taken by the successor trustees are nullities". The Korean Church of the World Crusade purportedly appeals from an order of the same court dated March 24, 1988.

Ordered that the purported appeal from the order is dismissed for failure to file a notice of appeal therefrom; and it is further,

Ordered that the judgment is reversed, on the law, and a new trial is granted on the issue of whether the Korean Church of the World Crusade properly exercised its contractual right to disaffiliate itself and its property from the New York Annual Conference of the Methodist Church; and it is further,

Ordered that Reverend Nam Un Cho and the Korean Church of the World Crusade are awarded one bill of costs payable by the New York Annual Conference of the Methodist Church and the New York Korean Methodist Church.

The Korean Church of the World Crusade (hereinafter the WCC) began as an independent congregational church, incorporated under the name "The New York Church and Institute of the Korean Methodist Church" in 1972. In 1981, the WCC under the Reverend Nam Un Cho, moved from rented quarters in Elmhurst, Queens, to a new church at 94 Fulton Avenue, Hempstead, which it leased at a rental of $10,000 per year, with an option to purchase for $675,000 which expired on March 31, 1985. The WCC raised and paid some $400,000 between August 1980 and March 1981. It also purchased a parsonage located at 199 St. Paul's Road in Hempstead for $100,000, with the seller taking back a $70,000 purchase-money mortgage.

In December 1983 the WCC voted to explore a so-called "joinder" with the New York Annual Conference of the Methodist Church (hereinafter the UMC) and meetings were held between a committee appointed by the WCC and representatives of the UMC. The minutes of a meeting held with UMC

District Superintendent Reverend Elemit Brooks on May 8, 1984, contain the following language: "1) The matter of the property—the property would become the property of the New York Annual Conference with the trustees of the local church as custodians of all present property and property acquired after becoming a member of the New York Annual Conference of the United Methodist Church. Rev. Brooks is recommending that to protect the interest of the present congregation that the congregation be admitted with the understanding that if in three years there is unhappiness with being a United Methodist Church they may withdraw and property will be returned to the existing congregation.—Agreed."

The local congregation approved the terms of the "joinder", and it was ceremonially admitted to membership in the UMC at a formal convocation in Bridgeport, Connecticut, later that same month.

On or about October 1, 1984, the WCC changed its name to the New York Korean United Methodist Church. Thereafter it borrowed $260,000 from the financial arm of the UMC, and on March 29, 1985, it closed title to the church premises at 94 Fulton Avenue, Hempstead.

Thereafter dissension broke out among the members of the WCC, which divided into two factions, one supporting the Reverend Cho and the other, which opposed him, backed by the UMC. On December 28, 1986, roughly two thirds of the WCC voted to withdraw from the UMC. The existing trustees were ousted, and new trustees were selected. The new Board of Trustees executed and filed another amendment to the certificate of incorporation, altering the congregation's name to the Korean Church of the World Crusade.

The UMC commenced an action against the Reverend Cho, whom it had discharged as pastor of the WCC, demanding, *inter alia,* that he turn over to it the church and the parsonage, which it claimed had become the property of UMC pursuant to the two congregations' joinder agreement. The WCC brought a separate action, *inter alia,* for a declaratory judgment.

At the joint jury trial of the two actions, all of the witnesses who were questioned on the subject, including those produced by the UMC, in substance testified that the three-year withdrawal condition did exist.

A judgment was rendered by the Supreme Court, holding that the WCC could rightfully separate itself, with its property, from the UMC, but that the actions taken by the WCC

on December 28, 1986 and following were illegal and therefore nullities. The latter holding was reiterated in the court's order of March 24, 1988.

The uncontroverted evidence establishes that the contract between the WCC and the UMC contained a condition permitting the WCC to withdraw with its property within three years if it was dissatisfied with the affiliation. The Reverend Brooks, who made this representation to the WCC, had been sent by the UMC to negotiate the terms of the joinder, and the WCC was entitled to rely upon his actual or apparent authority to bind the UMC to the proposed condition. Moreover, to the extent that the UMC argues that Reverend Brooks did not have the authority to offer the three-year withdrawal option, we find that in that event there was no meeting of the minds, with the result that no contract was entered into.

Accordingly, it is clear that the WCC had the right to withdraw from the UMC with its property within three years. However, there remains the issue of whether that right was properly exercised.

We note that the trial court erred in refusing to take evidence on the propriety of the meeting held by the WCC on December 28, 1986, and in further declaring that meeting illegal pursuant to Religious Corporations Law article 10, since the WCC, which for the purpose of exercising its contractual right to withdraw must be considered a congregational church, is governed by Religious Corporations Law article 8.

We therefore remit the matter for a new trial on this issue. However, we note that the parties have indicated that there is currently litigation pending between various factions within the WCC in the Supreme Court, Nassau County, involving the validity of the meeting held on December 28, 1986. While it is beyond the power of this court *sua sponte* to order a joint trial or a consolidation of the present consolidated actions with that action *(see,* CPLR 602; *Singer v Singer,* 33 AD2d 1054), the parties may, if they be so advised, move for that relief in order to obviate the possibility of inconsistent results. Mangano, J. P., Bracken, Kunzeman and Spatt, JJ., concur.